E-FILED
Tuesday, 29 July, 2008   08:30:24 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LARRY BRUMBAUGH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 3:08-cv-3077 |
| | ) | |
| NELSON TREE SERVICE, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPLY IN SUPPORT OF
## DEFENDANT'S MOTION FOR PARTIAL DISMISSAL
## OF FIRST AMENDED COMPLAINT

In his First Amended Complaint, Plaintiff Larry Brumbaugh asserted a claim under the Illinois Whistleblower Protection Act ("IWPA"). Nelson Tree has moved to dismiss this claim contending that the allegations advanced by Brumbaugh do not support his claim as a matter of law. Through both the Memorandum in Support filed by Nelson Tree and Brumbaugh's Response, the facts and applicable legal framework have been conceded and the legal issue to be resolved in this Motion has been refined to a single issue – whether Brumbaugh's alleged intra-company complaints to Nelson Tree's managers constitute whistleblowing "to a government or law enforcement agency" as required by 740 ILCS 174/15(b). Because such complaints do not constitute whistleblowing "to a government or law enforcement agency," Nelson Tree is entitled to judgment as a matter of law.

In his Response, Brumbaugh concedes that "Defendant's memorandum correctly describes the general status of the law with respect to the requirement that complaints must be made to someone with governmental, regulatory responsibilities if they are not made in in-court testimony." (Response at 1) Brumbaugh further concedes that during his employment he made complaints only to three members of Nelson Tree's management regarding what he alleges were "corrupt practices involving the billing of

excessive and fraudulent travel practices" to a public utility and safety violations.[1] (Amended Complaint ¶¶ 7 (a) – (c)). Finally, Brumbaugh concedes that he did not make any complaints about these issues directly to any governmental entity. Rather, Brumbaugh argues that his complaints to the internal managers should be construed as complaints "to a government or law enforcement agency" because "the employer is an important facet of the regulatory system . . . ." There is no support for such an extension of the statutory scheme in either the language of the statute or existing Illinois law. As such, Nelson Tree is entitled to dismissal of Brumbaugh's IWPA claim.

Although Brumbaugh prefers to characterize his theory as one of first impression, the reality is the very statutory language upon which Brumbaugh bases his claim does not support his theory. The protections offered by the IWPA, as is evidenced by the very language of the statute, are specific and limited. By its express wording, the IWPA only protects employees who make certain covered disclosures "to a government or law enforcement agency." *See* 740 ILCS 174/15(b). Contending that internal managers of a private employer constitute either is nothing short of a complete rewriting of the statutory language.

It is well-settled that "[t]he first cannon of statutory construction is that, where the language of the statute is clear, the court must apply its plain meaning as written." *Demick v. City of Joliet*, 135 F. Supp. 2d 921, 930 (N.D. Ill. 2001) *citing Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). The District Court for the Northern District of Illinois has more specifically explained a federal court's role in interpreting the IWPA when it stated:

> "In ascertaining the meaning of an Illinois statute, the Court must apply the same rules of statutory construction that the Supreme Court of Illinois would use if faced with the same task. *United States Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153, 1156 (7th Cir. 1997). We thus begin by examining the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law. *J.S.A. v. M.H.*, 224 Ill. 2d 182 (Ill. Feb. 1, 2007). The Court must afford the statutory language its plain and ordinary meaning, and if the language is clear and unambiguous, the Court must apply the statute without further aids of statutory construction."

---

[1] Brumbaugh contends that the "safety violations" involved "employees with no driver's licenses or no CDL endorsements, no required environmental permit known as 'spray' licenses required of foresters and convicted felons . . . ." (Amended Complaint ¶¶ 7(b) – (c))

*Averett v. Chicago Patrolmen's Fed. Credit Union*, 2007 U.S. LEXIS 21649 at *10-*11 (N.D. Ill. 2007) (internal parallel citations omitted). Thus, the first inquiry required in this case is to determine the plain meaning of "government" and "law enforcement agency."

The plain meaning of "government" does not include a private employer, regardless of the employer's reporting obligations, and no reader of the statutory language would construe "law enforcement agency" to cover a private employer. The plain meaning of each term refers to an independent entity that actually exists and possesses a level of authority over the actions of others that is simply not present when compared with the status and role of a private employer. Simply put, when everyday citizens refer to the "government" or a "law enforcement agency" they are not referring to "Bill in accounting," "Mary in sales," or even "Beth our CEO." To everyday people, the plain meaning of these terms never refer to managers of a private employer. Thus, the IWPA is not applicable to Brumbaugh's internal complaints and Nelson Tree is entitled to dismissal of the IWPA claim.

Courts also refer to a statute's legislative history to determine its intended meaning. *See, e.g., Grady v. Sikorski*, 349 Ill. App. 3d 774, 778 (Ill. App. 2004) ("Furthermore, although the Act is not ambiguous, and this court therefore is not compelled to use methods of statutory construction to ascertain its meaning, the Act's legislative history is illustrative.") The legislative history of the IWPA confirms the position that the law was not intended to cover internal complaints to private employers because the representatives debating its meaning repeatedly referenced the requirement that the covered employee must go to external "authorities" to complain. *See Ill. H.R. Trans. 2003 Reg. Sess. No. 63.* (Attached as Exhibit A). The examples of such authorities given in the House debate involved an employee contacting the Attorney General's Office or complaining to the Securities and Exchange Commission. *Id.* There was no suggestion whatsoever that merely complaining to a manager of your employer would suffice to trigger coverage and the plain language of the statute, as well as the legislative intent, confirms that coverage for that scenario was not intended.

The fact is, each court that has addressed whether an internal complaint satisfies the requirements of the IWPA, has rejected such a notion. In *Reidlinger v. Hudson Respiratory Care, Inc.*, 478 F. Supp. 2d

1051 (N.D. Ill. 2007), the United States District Court for the Northern District of Illinois considered whether internal complaints were sufficient to trigger the law's protection. Contrary to the suggestion of Brumbaugh, that case involved the highly-regulated health products industry and the court specifically noted the potential Food and Drug Administration involvement. Yet, based upon the legislative history of the law and the plain meaning of the language in the statute, the court found that to trigger protections under the IWPA an employee must have reported the concerns to an outside governmental agency. *Id.* at 1054 – 1055. The fact the employer had a reporting and review role in the FDA's regulatory scheme did not alter this conclusion.

The same result was reached in *Robinson v. Morgan Stanley, Discover Financial Services LLC*, 2007 U.S. Dist. LEXIS 70604 (N.D. Ill. 2007). In *Robinson*, the employee worked in the securities industry, another heavily-regulated environment. Despite the presence of reporting obligations contained in that industry's regulatory schemes, the Court rejected internal complaints as within the protection of the IWPA and held, "Robinson has clearly alleged that she experienced retaliation in response to *internal* complaints made to her employer. This type of activity is not protected by the Whistleblower Act." *Id.* at *18 (italic in original). *See also, Callahan v. Edgewater Case & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 630, 635 (Ill. App. 2007) (in dicta, "[t]he fact that individuals discharged in retaliation for reporting illegal activities to their supervisors have no right of action under the Whistleblower Act does not compel the conclusion that they have no right of action at all.") In sum, no court has reached the conclusion urged by Brumbaugh. Others have flatly rejected it.

Finally, the absurdity of Brumbaugh's position is highlighted by looking at the definition section of the IWPA. The IWPA excludes from its coverage employees of the "government." *See* 740 ILCS 174/5. Thus, if Nelson Tree was actually the "government" for purposes of the IWPA, it would be exempt from the act's coverage in the first place. Surely, this circular reading was not intended by the legislature.

According to its express terms, the IWPA applies only to the external complaints of employees to the government or law enforcement agencies. Brumbaugh's internal complaints to his managers simply are not subject to the statute's protections.

For the reasons stated in the Memorandum in Support and this Reply, Brumbaugh's claim based upon the Illinois Whistleblower Protection Act must be dismissed with prejudice.

Respectfully submitted,

___/S/ James A. Hansen_____
James A. Hansen (6244534)
SCHMIEDESKAMP, ROBERTSON, NEU & MITCHELL LLP
525 Jersey
P.O. Box 1069
Quincy, IL 62306
(217) 223-3030 phone
(217) 223-1005 fax
jhansen@srnm.com


Todd D. Penney (0059076) (Ohio)
SCHEUER MACKIN & BRESLIN LLC
11025 Reed Hartman Highway
Cincinnati, Ohio  45242
(513) 984-2040 Ext. 219 phone
(513) 984-7944 fax
tpenney@smblaw.net

Attorneys for Defendant Nelson Tree Service, Inc.

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Defendant's Reply in Support of Motion for Partial Dismissal was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Anthony B. Cameron
529 Hampshire Street, Suite 511
Quincy, IL 62301

Counsel for Plaintiff

this 29th day of July, 2008.

      /S/ James A. Hansen
James A. Hansen (6244534)
SCHMIEDESKAMP, ROBERTSON, NEU & MITCHELL LLP
525 Jersey
P.O. Box 1069
Quincy, IL 62306
(217) 223-3030 phone
(217) 223-1005 fax
jhansen@srnm.com

STATE OF ILLINOIS
93rd GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

63rd Legislative Day                              5/22/2003

Speaker Novak: "Any further discussion? Seeing none, the question is, 'Shall Senate Bill 1789 pass?' All those in favor vote 'aye'; all those opposed vote 'no'. The voting is open. Have all voted who wish? Have all voted who wish? Have all voted who wish? Mr. Clerk, take the record. On this question, there are 118 voting 'yes', 0 voting 'no', 0 voting 'present'. And having reached the required Constitutional Majority, Senate Bill 1789 is hereby declared passed. Senate Bill 1872, the Gentleman from Cook, Mr. Fritchey. Mr. Fritchey, Senate Bill 1872. Mr. Clerk, read the Bill, please."

Clerk Bolin: "Senate Bill 1872, a Bill for an Act concerning employment. Third Reading of this Senate Bill."

Speaker Novak: "Mr. Fritchey."

Fritchey: "Thank you, Speaker. Senate Bill 1872 is a further enhancement of the whistleblower protections in the state. What this does is prohibit an employer from taking any actions to prevent an employee from disclosing information to the government, if the employee has reasonable cause to believe that there was a violation of law. I'd be happy to answer any questions."

Speaker Novak: "Is there any discussion? The Gentleman from Vermilion, Mr. Black."

Black: "Mr. Speaker, I don't know who that whistleblower is in the chamber, but I certainly hope you don't grant him immunity or her whoever it is. That thing hurts my ears. And I don't get any… don't get any sympathy. I don't get any respect. Will the Sponsor yield?"


EXHIBIT A

STATE OF ILLINOIS
93rd GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

63rd Legislative Day                                    5/22/2003

Speaker Novak: "Yes, Sir."

Black: "Representative, are we on the order of Cook County? Well, let's… well, no… your colleague's from McHenry County, so I can't say that. In the last five minutes, we've had two whistleblower laws. What's the difference? I mean, a whistleblower is a whistleblower is a whistleblower. Right or wrong?"

Fritchey: "Actually, I would say there's a lot of nuances to it. What this Bill addresses is the whistleblower in a private situation. If they… what we're saying is that a boss cannot fire an employee for going to the authorities and saying, something is going on that's a violation of the law. That's a different scenario than a public sector employee being protected from retaliation. So, what we're trying to do is say, you know what, in any segment, Representative…"

Black: "Excuse me, Representative, I can't hear."

Fritchey: "I have this…"

Black: "Do you… It sounds to me like there's some…"

Fritchey: "I have a whistling in my ear."

Speaker Novak: "Ladies and Gentlemen…"

Black: "It sounds to me like…"

Speaker Novak: "Ladies and Gentlemen…"

Black: "Yes, thank you, Mr. Speaker."

Speaker Novak: "…would you give Mr. Black your attention."

Black: "Good heavens, it sounded like the seven dwarfs marching through on their way to work. Whistle while you work."

Speaker Novak: "Mr. Black."

```
                    STATE OF ILLINOIS
                  93rd GENERAL ASSEMBLY
                  HOUSE OF REPRESENTATIVES
                    TRANSCRIPTION DEBATE
```

63rd Legislative Day                                    5/22/2003

Black: "Uh, there it goes again. Mr. Speaker, I would ask you to clear the chamber."

Speaker Novak: "Well, not hardly."

Black: "Oh."

Speaker Novak: "Mr. Black, proceed with your question, Sir."

Black: "All right. So, the previous whistleblower Act was primarily aimed at government entities and yours is aimed at the private sector?"

Fritchey: "Yes, Sir."

Black: "All right. Are you aware of any case where a private company would be so foolish as to publicly state, I'm gonna fire you because you told the auditor that we're hiding money?"

Fritchey: "I think one would look no further than Enron to see that type of situation where there may be retaliatory action taken."

Black: "All right. But this law would only apply to a company domiciled or incorporated in Illinois, correct?"

Fritchey: "Yes, Sir."

Black: "All right. And what kind of protection does the Bill offer?"

Fritchey: "It basically provides for a Class A misdemeanor as a civil penalty against that employer from taking actions."

Black: "Okay. So, but… if you whistle while you work or whistle in the dark, this doesn't impact you at all?"

Fritchey: "And I'm not just whistlin' Dixie."

Black: "I hope this is the last whistleblower Act. I can't take anymore of these shrill sounds. So, Mr. Speaker,

STATE OF ILLINOIS
93rd GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

63rd Legislative Day                                    5/22/2003

>   while you gave a valiant attempt to gain control of the chamber, I'm not sure you have it back yet, but with practice, Sir, you may be as good as Representative Hartke or Representative Brunsvold, you're close, but you're not there yet."

Speaker Novak: "Thank you. Further discussion? The Gentleman from Cook, Mr. Scully."

Scully: "Thank you, Mr. Speaker. Will the Sponsor yield?"

Speaker Novak: "Sponsor yields."

Scully: "Representative, I'm concerned about the… the situation in which an honest employer has an employee on the payroll and this employee thinks wrongfully, incorrectly thinks, that the employer is violating the law. And under this legisla… and this employee incorrectly accuses the employer of violating laws and does so on a regular basis, in each case being incorrect, but reasonable in their belief, but incorrect. Are you saying, the employer has to keep that person on the payroll?"

Fritchey: "There are no protections provided under this Bill for frivolous running to the authorities. There has to be a finding, if there was a reasonable belief that there was a violation of the law."

Scully: "But if the employee is incorrect, the employer has to keep that person on the payroll. Is that correct?"

Fritchey: "The employer cannot take actions in retaliation for an employee going to any authorities based upon a reasonable belief. That's correct."

Scully: "Even if the employee is wrong."

```
                    STATE OF ILLINOIS
                   93rd GENERAL ASSEMBLY
                  HOUSE OF REPRESENTATIVES
                    TRANSCRIPTION DEBATE
```

63rd Legislative Day                                    5/22/2003

Fritchey: "The ul… whether or not there was an ultimate finding to be a violation of the law is irrelevant."

Scully: "To the Bill."

Speaker Novak: "To the Bill."

Scully: "Ladies and Gentlemen of the House, under current Illinois Law an employee has a duty of loyalty to his or her employer. Now, if this Bill is enacted into law, we will completely strike down that very basic principle. There's also no limitation in this law on what type of violations of law would constitute justifiable whistle blowing by the employee. They'd have the right to blow the whistle anytime they reasonably believe they can and the employer has no recourse. They can't retaliate. They cannot terminate that person who is… who was incorrectly and wrongfully accusing the employer of violations of law. I think this is a horrible piece of legislation for businesses both large and small in the State of Illinois. I strongly urge you to vote 'no' on this Bill. Thank you."

Speaker Novak: "Further discussion? The Gentleman from Lake, Mr. Mathias."

Mathias: "Thank you, Mr. Speaker. Will the Representative yield?"

Speaker Novak: "Sponsor'll yield."

Mathias: "Representative, this Bill and if I'm not mistaken, applies not only to whistle blowing dealing with criminal actions, but any rule, regulation, basically, anything that the employer may have done wrong. Is that correct?"

STATE OF ILLINOIS
93rd GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

63rd Legislative Day                                    5/22/2003

Fritchey: "That... It'll be any... for disclosing a violation of a State or Federal Law, rule or regulation. You're correct."

Mathias: "So, in a small business situation, if an... if an employee wants to make sure he has employment for life, all he has to do is make sure that, you know, and in every situation, you know, it's one thing if you're trying to protect a small business from, you know, their employer committing felonies or committing, you know, large and serious crimes, but I don't know of any business that, you know, in the course of business with all the rules and regulations that we have today that could, you know, meet every single rule and regulation. And under your Bill, if someone turns in their employee for violating any small regulation, whether that regulation is even known to the employer, he won't be able to fire 'em because of this... of your Bill. Is that correct?"

Fritchey: "No, that's not correct."

Mathias: "Then what part of my statement is incorrect?"

Fritchey: "The supposition."

Mathias: "Oh, okay. Thank you. To the Bill."

Speaker Novak: "To the Bill."

Mathias: "I agree with Representative Scully. The idea behind this Bill is obviously a good idea and we want to have whistleblowers and we want to make sure that our employers follow the law. But it's one thing to follow the law dealing with criminal acts and obviously, very serious violations of the law... And another thing, for every single rule or regulation to be able, you know, for employee to

STATE OF ILLINOIS
93rd GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

63rd Legislative Day                                          5/22/2003

> say, well, you know, you forgot to fill this line out on this form that you turned in and I have a rea… I know it 'cause I was there when you filled it out. Now, he can say, well, anytime you fire me it's because I turned you in. While I think the idea is well, think about how this is going to affect every single business in the State of Illinois since it deals with just one employee. There's no limit on this to ten employees or large employers, so long as you have one employee and your employer violates any single rule or regulation, that employee could use that as a reason never to get fired. I, again, urge a 'no' vote on this legislation."

Speaker Novak: "Further discussion? The Gentleman from Jackson, Mr. Bost."

Bost: "Thank you, Mr. Speaker. Will the Sponsor yield?"

Speaker Novak: "Sponsor'll yield."

Bost: "Representative, there are some legitimate questions being asked here and I hope that you can answer them. And the concern I have in… suppose we have… suppose I'm an employer… Mr. Speaker."

Speaker Novak: "Could you give… could you give Mr. Bost your attention, Ladies and Gentlemen."

Bost: "Suppose… and, you know, none of us want to see someone fired whenever they've clearly came in, saw a violation of law in the workplace and came in and turned them in. You don't want to see that person fired. But suppose there is a situation where a disgruntled employee for other reasons all of a sudden decides that, okay, well, I'm just gonna

STATE OF ILLINOIS
93rd GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

63rd Legislative Day                                    5/22/2003

        start turning 'em in and they come in and do the investigation. If that investigation is found to be that there was no violation of law and then that employer… can that employer fire them after that?"

Fritchey: "The employ… nothing in this limits any right of an employer nor should we to violate… to terminate an employee for cause. If you have an employee that's incompetent, if you have an employee that's not performing, if you have an employee that you would have terminate for any reason under the sky that you're allowed to terminate that person for, you still can. What we're saying is, you can't terminate them solely for going, in good faith, to the authorities to let the authorities know that there's been a violation of law occurring."

Bost: "Okay. What… what is in this Bill to stop a employee from claiming… to stop an employee from claiming that they were being fired for that reason and actually, it might be for incompetence or mishandling of books or destruction of property or all the other things that might be there?"

Fritchey: "Representative, the same line of thinking will go to today that nothing stops an employee from alleging that they were fired because of their gender, of their age, of their race, but they still need to come up and show that. You just can't make that claim and hide beneath it. So, nor would you under this Bill just be able to come in and get an absolute protection and say, I was fired because I went to the Attorney General's Office or I was fired because I went to the Securities and Exchange Commission.

STATE OF ILLINOIS
93rd GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

63rd Legislative Day                                    5/22/2003

> You gotta show that that's why you were fired. If they say, yeah, they went to the authorities, but that's not why I fired him. I fired him because he's a lousy employee."

Bost: "Okay. Can you answer for me, at this time, if a person would seek civil action based on the fact that this would occur now, would they not be able to recoup loss and all of those type things from the employer under the scenario you just said right now?"

Fritchey: "Under the law, today?"

Bost: "Yes."

Fritchey: "I don't believe… you do not have a specific remedy today for a retaliatory discharge stemming from going to the authorities to report a violation of law."

Bost: "If a judge ruled that it was a clear case where they were fired for this type action because they… a judge couldn't just automatically say, you know, what you did was wrong?"

Fritchey: "That's why… The judge could say, I think what you did was wrong, but you didn't violate the law. Mike, you hit it on the head and that's exactly why we need this Bill because you and I, I think, both think that somebody should have protection from doing that. And as we stand here today, they don't have that protection."

Bost: "Under civil action, they don't have that?"

Fritchey: "I… Let me clarify this to say, in my sincere belief, and I'm pretty sure I'm right on this one, you do not have a cause of action for retaliatory discharge today stemming

STATE OF ILLINOIS
93rd GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

63rd Legislative Day                      5/22/2003

from going to the authorities to disclose a violation of law."

Bost: "Okay. I would have thought… Okay."

Fritchey: "Common sense would tell you that you should have that protection and this law would codify that."

Bost: "I'm having… I am trying to figure out what is in this Bill though that stops someone from using this as a lever to go back on an employer when it was not that reason that they were let go?"

Fritchey: "Again, if this…"

Bost: "Will this not all of a sudden open… swing the door open for all of a sudden every time you turn around somebody's being drug into court… an employer's being drug into court because someone claims that…"

Fritchey: "No, again, and I don't mean to be redundant, it's the same thing today. You can have somebody come in who gets fired and they'll say, I was fired because I'm 70, I was fired because I'm a minority, I was fired because I'm overweight, I was fired for whatever it might be. They need to come and show… they can… anybody can make any claim, we all know that. There's a lot of frivolous lawsuits out there. Just filing the lawsuit doesn't get you home."

Bost: "Okay. Mr. Speaker, to the Bill."

Speaker Novak: "To the Bill."

Bost: "I don't know that the other two speakers were in the wrong. I'm beginning to wonder about this Bill myself, if this isn't an opportunity and I'll watch the debate a

STATE OF ILLINOIS
93rd GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

63rd Legislative Day                                    5/22/2003

> little bit closer, but I think each of us should watch this. We shouldn't just automatically vote this Bill out and say, oh, yes, this is a wonderful thing because we don't want anybody to be discriminated against because they were a whistleblower. None of us want that. But also, we don't want to give a tool to a disgruntled employee that every small business can be hit with when they actually have done nothing wrong. So, if everyone would please watch how they vote on this."

Speaker Novak: "Further discussion? The Gentleman from Cook, Mr. Rita."

Rita: "Would the Sponsor yield?"

Speaker Novak: "Sponsor yields."

Rita: "I'm finding it… I'm a little confused on this. You're saying that only is for one specific thing for a whistleblower that someone cannot use this as a tool to pro… have job protection?"

Fritchey: "Can you restate that?"

Rita: "This is for one specific reason if they… it protects 'em from being a whistleblower is what you're saying."

Fritchey: "It protects…"

Rita: "How could… how could… couldn't they use this as a shield to have job protection?"

Fritchey: "No."

Rita: "You have not answered that from what I've heard through the previous speakers."

Fritchey: "I would tend to disagree, but what… Today, you can be fired for poor performance as an employee. Under this

STATE OF ILLINOIS
93rd GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

63rd Legislative Day                                5/22/2003

Bill, you can fired for poor performance as an employee. Today, you can be fired for running to the authorities. With this law in place, you can't do this. This is really as much, if not more so, a public safety Bill than it is an employment Bill or a whistleblower Bill. You do not want to have employees afraid to go to the authorities to disclose an environmental violation, a worker protection violation, a labor law violation, a tax evasion violation and not go to the authorities because they're afraid that doing the right thing will cost them their job and their families' ability to have a roof over their head."

Rita: "But in turn, if an employee knows that he's on bad paper, could use this in turn to keep his employment. That's how I'm looking at this."

Fritchey: "I… I… I…"

Rita: "That's what I've heard in this debate."

Fritchey: "I would vehemently disagree with that because an employee that was going to be terminated for a cause the employer would be able to show that that employee was terminated for a cause that that was in case the fact."

Rita: "Thank you."

Speaker Novak: "Further discussion? Mr. Fritchey to close."

Fritchey: "Thank you. As I just responded to the last speaker, this very much is a public safety and a matter of sound public policy. The Senate, in its review, passed this Bill out on 57-1 after a thorough debate and discussion on these issues. We need to send a clear signal that we are not going to harbor employers who try to take actions out on

STATE OF ILLINOIS
93rd GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

63rd Legislative Day                                      5/22/2003

    employees who are simply trying to do the right thing and disclose violations of the law. I'd request an 'aye' vote. Thank you."

Speaker Novak: "And the question is, 'Shall Senate Bill 1872 pass?' All those in favor vote 'aye'; all those opposed vote 'no'. The voting is open. Have all voted who wish? Have all voted who wish? Have all voted who wish? Mr. Clerk, take the record. On this question, there are 87 voting 'yes', 31 voting 'no', 0 voting 'present'. Having reached the required Constitutional Majority, Senate Bill 1872 is hereby declared passed. Senate Bill 1918, the Gentleman from Clinton, Mr. Granberg. Mr. Clerk, read the Bill, please."

Clerk Bolin: "Senate Bill 1918, a Bill for an Act regarding finance. Third Reading of this Senate Bill."

Speaker Novak: "The Gentleman from Clinton, Mr. Granberg."

Granberg: "Thank you. Thank you, Mr. Speaker, Ladies and Gentlemen of the House. Currently under an Illinois law when our employees are reimbursed for mileage, that tracks the federal system, so whatever reimbursement there is at the state level mirrors what the Federal Government receives. This Bill is a request of CMS that says if the Federal Government lowers their reimbursement rate for mileage then the state's rate will also be lowered in accordance with our normal policy. But it will change so if the Federal Government lowers their reimbursement rate ours will also be lowered like we do now, but we just won't have to wait to the beginning of the next fiscal year to do